IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PRINCE ALLEN MARSH,                :
                                   :
            Plaintiff,             :
                                   :
     v.                            : Civ. Act. No. 05-00087-JJF
                                   :
DELAWARE STATE UNIVERSITY,         :
DR. CHARLES SMITH, DREXEL          :
BALL, KAY MOSES, LOWAN PITT,       :
                                   :
            Defendants.            :

Prince Allen Marsh, Pro Se Plaintiff.

Frank E. Noyes, II, Esquire of WHITE & WILLIAMS, Wilmington, Delaware.
Attorney for Defendants.

### MEMORANDUM OPINION

January 19, 2006
Wilmington, Delaware

Farnan, District Judge.

    Pending before the Court is a Motion For A Preliminary Injunction (D.I. 6) filed by Plaintiff, Prince Allen Marsh, requesting the Court to require Defendants to honor his five year NCAA scholarship and allow him to continue attending classes at Delaware State University (the "University"). Plaintiff also requests the Court to enjoin Defendants from submitting "derogatory statements" about Plaintiff to prospective schools that Plaintiff may seek to attend. The Court held a hearing on the Motion on December 1, 2005, and heard testimony from Plaintiff, who appeared pro se, and Defendants Pitt and Moses, who were represented by counsel. For the reasons discussed, the Court will deny Plaintiff's Motion.

## BACKGROUND

    According to the Complaint, Plaintiff started college at Delaware State University in September 2001 with a five year NCAA scholarship. Plaintiff was an accomplished Track and Field athlete during his high school years. With respect to his scholarship, Plaintiff testified that he believes he has two and a half years left on his scholarship and that his eligibility under the scholarship ends sometime in 2007. Tr. at 17:13-20; 19:5-8.

    Plaintiff testified at the hearing that, on January 20, 2004, he was arrested by Dover Police off-campus and was charged

1

with possession of marijuana and possession of a handgun. Tr. 20:1-11. Plaintiff testified that he admitted to drug paraphernalia charges, which Plaintiff described as a misdemeanor. Tr. 44:15-23; 45:2-11. Plaintiff also testified that he completed a six month drug program and a year of probation in connection with his conviction. Tr. 43:21-24; 44:4-6. Plaintiff further testified that it was his understanding that as of January 2006, his record will be expunged. Tr.37:1-38:10.

Pursuant to a warrant, Plaintiff's dormitory room on-campus was searched by Dover Police, along with a Delaware State Police detective and a security officer from the University. A single 9mm round of ammunition matching the caliber of the weapon found in Plaintiff's possession was recovered among Plaintiff's belongings, along with a small plastic bag of marijuana. Tr.33:18-23; DX-4.

By letter dated January 23, 2004, Plaintiff was notified that he was being charged by the University with possession of illegal drugs, possession of drug paraphernalia and possession of a weapon and ammunition. Plaintiff was immediately suspended indefinitely pending a hearing and notified of his right to request a hearing. DX-1. By letter dated January 27, 2004, Plaintiff requested a hearing as soon as possible. By letter dated January 28, 2004, Plaintiff was notified of the time, date

2

and location of his hearing before the Zero Tolerance Subcommittee. Plaintiff was further informed that he had the right to have a student, faculty, or staff member present to advise him and that he had the right to request the presence of his accuser and present witnesses to testify on his behalf.

Following the hearing, the members of the Zero Tolerance Subcommittee issued a Sanction Recommendation Form finding Plaintiff not responsible for the drugs and drug paraphernalia charges, but responsible for the ammunition charge. The fact findings related to this charge indicate that Plaintiff "admitted to possession of bullet." Based on the finding of responsibility for the ammunition, the Subcommittee recommended expulsion from the University. This decision was administratively reviewed by Defendant Lowan Pitt, who modified the decision to hold Plaintiff responsible for drug paraphernalia in his room and vehicle based on the University's guidelines regarding student responsibility for areas under the student's control. Defendant Pitt noted in parentheses that if the accused presented a letter from the party in the car admitting ownership of the drugs, he would be found not responsible. The record does not reflect that such a letter was submitted by Plaintiff.

By letter dated February 9, 2005, Plaintiff was informed that he had violated the Zero Tolerance Policy and would be expelled, effective immediately. Plaintiff was informed of his

3

right to appeal and instructed that an appeal would only be allowed for (1) lack of due process, i.e. when a student can show an error in the hearing, or arbitrariness in the finding, (2) lack of substantial evidence, and (3) evidence that was not considered or available that would subsequently change the nature of the case.  Plaintiff requested an appeal by letter dated February 11, 2004, on the grounds that substantial evidence did not support the charges against him.  Plaintiff stated that the charges against him were not brought by the school, but by the State of Delaware, and that the Zero Tolerance Policy related to on-campus activities only, while he was arrested off-campus.

Plaintiff's request for an appeal was denied based on the "officer's report" and the lack of any new evidence to justify reconsideration of the sanction imposed.  By letter dated February 24, 2004, Plaintiff was informed that his request for an appeal was denied.  Thereafter, on March 3, 2004, Plaintiff's mother wrote to the University to express her disagreement with the decision to expel her son and to notify the University that her son would be filing a civil lawsuit.

Plaintiff then filed the instant civil action.  Although Plaintiff's Complaint purports to recite three causes of action, it appears to the Court that Plaintiff is actually alleging four causes of action:  (1) Defendants violated his due process rights under the Fifth and Fourteenth Amendments, (2) Defendants

4

violated his right to a jury trial under the Seventh Amendment, (3) Defendants subjected him to cruel and unusual punishment under the Eighth Amendment, and (4) Defendants discriminated against him on the basis of his race under Title II of the Civil Rights Act, 42 U.S.C. § 2000a.

## DISCUSSION

### I. Legal Standard For Injunctive Relief

In determining whether to issue a preliminary injunction pursuant to Federal Rule of Civil Procedure 65, courts must consider (1) whether the movant has shown a reasonable probability of success on the merits, (2) whether the movant will be irreparably injured by denial of the relief, (3) whether granting preliminary relief will result in even greater harm to the nonmoving party, and (4) whether granting the preliminary relief will be in the public interest. Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153 (3d Cir.1999). The burden of establishing that injunctive relief is warranted rests on the party seeking the relief.

### II. Whether Plaintiff Is Entitled To An Injunction

Balancing the factors for injunctive relief in light of the evidence adduced at the hearing and the circumstances in this case, the Court concludes that Plaintiff has not demonstrated that the extraordinary remedy of an injunctive is warranted. The Court supports its conclusion with the following analysis of each

element required for injunctive relief.

    A.    <u>Likelihood Of Success On The Merits</u>

Plaintiff alleges four possible causes of action in his Complaint. The Court will analyze each one in turn to determine whether Plaintiff is likely to succeed on his claims.

        1.    Eighth Amendment Claim

Plaintiff alleges that Defendants have subjected him to cruel and unusual punishment as a result of their decision to expel him. The Eighth Amendment prohibition against cruel and unusual punishment applies to the States through the Fourteenth Amendment. However, the Eighth Amendment is limited to those individuals who have been convicted of criminal offenses and are incarcerated. It does not apply to disciplinary measures meted out in public schools. <u>Ingraham v. Wright</u>, 430 U.S. 651, 664 (1977). Accordingly, the Court concludes that Plaintiff has no chance of success regarding his Eighth Amendment claim.

        2.    Seventh Amendment Claim

Plaintiff next alleges that Defendants violated his right to a jury trial under the Seventh Amendment. The constitutional right to a jury trial under the Seventh Amendment only applies to proceedings before a federal court. <u>See</u> <u>e.g.</u>, <u>Gasperini v. Center for Humanities, Inc.</u>, 518 U.S. 415, 418 (1996). Accordingly, the Court likewise concludes that Plaintiff has no reasonable chance of succeeding on his claim that Defendants

violated his Seventh Amendment rights during the University's disciplinary proceedings.

        3.    Due Process Clause

           a.    Procedural Due Process

Plaintiff next alleges that Defendants expelled him without due process by failing to provide him with certain procedural safeguards. Specifically, Plaintiff contends that he was denied his right to appeal the University's adverse decision.

There are two basic due process requirements: (1) notice, and (2) an opportunity to be heard. See e.g., Goss v. Lopez, 419 U.S. 565, 575 (1975). In the case of a ten-day suspension of a high school student, the Supreme Court concluded that oral notice was sufficient notice to satisfy due process requirements; however, the Supreme Court also recognized that longer suspensions or expulsions may require more formal notice. Id. at 581, 584. Courts reviewing due process claims in the context of expulsion have required written notice. Dixon v. Alabama State Bd. of Education, 294 F.2d 150 (5th Cir. 1961). Depending on the particular circumstances, courts have required the written notice to inform the accused of the charge and provide the accused with information about the policies or regulations that the accused has allegedly violated, the possible penalties, and the evidence that may be presented against him. See e.g., Flaim, 418 F.3d at 638; Dixon, 294 F.2d at 158.

7

With respect to the hearing requirement, due process is satisfied if the accused is provided with the opportunity to respond, explain and defend himself or herself. Flaim, 418 F.3d at 633-636 (discussing details of due process requirements in higher education disciplinary proceedings and collecting cases). If the hearing is a "live" hearing, courts have recognized that the accused has a right to be present. Id. at 635. Courts have also recognized that the hearing need not be open to the public and that counsel or a campus advocate need not generally be appointed, unless the procedures are overly complex or the student faces criminal charges stemming from the incident in question. Id. at 635-636. Courts have also concluded that due process is satisfied when the accused is given the right to make a statement and present evidence and witnesses at the hearing. Id. at 636. However, courts have also held that the right to appeal the school's decision is not required to satisfy the Due Process Clause. Id. at 636 (citing Foo v. Ind. Univ., 88 F. Supp. 2d 937, 952 (S.D. Ind. 1999)).

In this case, the Court concludes that Plaintiff has not demonstrated a reasonable likelihood of success on the merits of his due process claim.¹ Plaintiff was given written notice of

---

¹ Plaintiff made several claims at the hearing that the University misapplied its Zero Tolerance Policy because Plaintiff was arrested off-campus; he only admitted to a misdemeanor offense; and his state record can be expunged. However, it is evident from the testimony adduced at the hearing that the

8

the charges against him, informed of his right to present witnesses and to have a student or faculty advisor or representative present at his hearing. Plaintiff had a hearing at which he was given the opportunity to present evidence and make a statement. Plaintiff was also given the opportunity to appeal, if he could establish certain prerequisites, but his appeal was denied based upon the school's determination that he could not satisfy those requirements. Although there may have been room for more procedural safeguards, courts have uniformly recognized that the Due Process Clause only sets "a floor or lower limit on what is constitutionally adequate." Flaim, 418 F.3d at 629. As such, procedures that are not ideal, but nonetheless fundamentally fair, are sufficient to satisfy due process. Id. at 637. Accordingly, the Court cannot conclude

---

University primarily based its case on charges stemming from that which was recovered from Plaintiff's belonging on-campus, specifically a bullet which Plaintiff admitted possessing, and a bag of marijuana which Plaintiff was held responsible for based on his control of the area in which the drugs were found. Regardless of the drug charges, however, Plaintiff still faced expulsion for possession of the bullet which he admitted possessing. And, in any event, even if the University failed to adhere to its own policies in charging Plaintiff under the Zero Tolerance Policy, courts have concluded that such failures are insufficient to constitute due process violations. See infra Section II.A.3.b. of this Memorandum Opinion (discussing substantive due process violations); see also Hill v. Bd. of Trustees of Mich. State Univ., 182 F. Supp. 2d 621, 627 & n.2 (W.D. Mich. 2001) (recognizing that school's violation of its own rules does not rise to the level of a constitutional violation and collecting cases); Hammock, 93 F. Supp. 2d at 1234 (noting that court's role in § 1983 actions does not involve the reinterpretation of school regulations).

that Plaintiff has demonstrated that he is reasonably likely to prevail on his due process claim.

            b.    Substantive Due Process

To the extent Plaintiff is alleging a violation of his substantive due process rights, the Court also concludes that Plaintiff has not demonstrated a likelihood of success on the merits. There are two inquiries used for purposes of the substantive due process analysis. Under the first test, the plaintiff need not prove a violation of a specific liberty or property interest, however, the state's conduct must "shock the conscience." Rochin v. California, 342 U.S. 165, 172-173 (1952). Under the second test, a plaintiff must demonstrate a violation of an identified liberty or property interest protected by the Due Process Clause. See Nicholas v. Pennsylvania State University, 227 F.3d 133, 139 (3d Cir. 2000) (holding that property interest that falls within the ambit of substantive due process may not be taken away by the state for reasons that are "arbitrary, irrational, or tainted by improper motive").

Courts that have concluded that the state has engaged in conscious shocking behavior have typically done so in cases involving extreme or intrusive physical conduct, such as that which occurs in the case of physical or sexual abuse. See e.g., Gomes, 304 F. Supp. 2d at 124 (collecting cases). In contrast, courts considering suspension and expulsion for disciplinary

violations have declined to find that such suspensions or expulsions rise to the level of conscious shocking behavior. Flaim, 418 F.3d at 643 (holding that medical school student's expulsion for conviction of felony drug crime did not shock the conscience); Gomes, 304 F. Supp. at 125 (requiring extreme or intrusive physical conduct by state to rise to the level of conscience shocking behavior and concluding that suspension for alleged sexual assault did not violate substantive due process).

In addition, the Supreme Court has recognized that the pursuit of an education is not a fundamental right for purposes of due process[2], and courts that have found a property interest in continued enrollment in schools have assumed its existence. Gomes, 304 F. Supp. 2d at 125-126 (collecting cases, including Supreme Court cases, in which the right to continued enrollment has been assumed to be a property or liberty interest). However, even if such a property or liberty interest were identified here, the Court would conclude that Plaintiff has little chance of successfully showing a substantive due process violation. Courts are reluctant to become embroiled in the wisdom of and the manner in which educational institutions apply their policies. See Ratner v. Loudon County Public Schools, 16 Fed. Appx. 140, 142

---

[2] San Antonio Indep. Sch. Dist. v. Rodriquez, 411 U.S. 1 (1973); see also Hill, 182 F. Supp. 2d at 626-627 (holding that right to public college education is not a fundamental right and assuming without deciding that continued enrollment in university is a protected property interest).

11

(4th Cir. 2001) ("However harsh the result in this case, the federal courts are not properly called upon to judge the wisdom of a zero tolerance policy of the sort alleged to be in place at Blue Ridge Middle School or of its application to Ratner."); Mitchell v. Bd. of Trustees of Oxford Mun. Separate Sch. Dist., 625 F.2d 660, 664-665 (5th Cir. 1980). Rather, courts examining substantive due process violations in this context have only considered whether the punishment imposed is rationally related to a legitimate purpose. Seal v. Morgan, 229 F.3d 567, 575 (6th Cir. 2000). Courts considering expulsions in the context of drugs and weapons charges have concluded that such punishment is rationally related to the legitimate goals of maintaining safe and drug-free schools.[3] See e.g. Hammock v. Keys, 93 F. Supp. 2d 1222, 1231 (S.D. Ala. 2000) (denying motion to enjoin expulsion and concluding that student failed to state a substantive or procedural due process claim); Mitchell, 625 F.2d at 664-665. Accordingly, in these circumstances, the Court is not persuaded that Plaintiff can demonstrate that his punishment was arbitrary,

---

[3] The Court acknowledges that in Seal, 229 F.3d at 575, the Sixth Circuit concluded that expulsion for possession of a weapon pursuant to a zero tolerance policy was not rationally related to any legitimate state interest where the student did not knowingly possess the weapon. In this case, however, Plaintiff has not made an argument regarding knowing possession and the evidence before the Court indicates that the University based its decision, at least in part, on the fact that Plaintiff admitted possessing the bullet recovered among his belongings. Accordingly, the Court is not persuaded that the circumstances of this case resemble Seal.

capricious or lacked a rational basis to a legitimate state purpose, and therefore, the Court concludes that Plaintiff has not demonstrated a reasonable likelihood of success on the merits of a substantive due process claim.

4. Title II of the Civil Right Act

Plaintiff also alleges a cause of action for discrimination under Title II of the Civil Rights Act. Section 2000a of Title II of the Civil Rights Act, creates a private cause of action to remedy discrimination in public accommodations affecting interstate commerce. See Newman v. Piggie Park Enterprises, 390 U.S. 400 (1968). As a threshold matter, a plaintiff bringing a suit under this section must show that the establishment is a place of public accommodation within the meaning of the statute. Once this showing is made, the Plaintiff must then show the elements of a prima facie case of discrimination: (1) that the plaintiff is a member of a protected class, (2) that the defendant intended to discriminate against the plaintiff on that basis; and (3) that the defendant's racially discriminatory conduct abridged a right recognized in the statute.

In this case, the Court concludes that Plaintiff has not demonstrated a reasonable likelihood of success with respect to his Title II claim. Assuming, without deciding at this juncture,

that Title II is applicable in this context[4], Plaintiff has not demonstrated that the alleged discrimination in this case was the result of Plaintiff's membership in a protected class. Plaintiff alleges in his Complaint that he is African American, but Plaintiff has not tied his allegations against Defendants to his race. Stated another way, Plaintiff has not alleged that he was discriminated against because he was African American. In his Complaint and at the hearing, Plaintiff referenced other alleged breaches by the University of NCAA policies, but membership or affiliation with the NCAA is not considered a protected class. Accordingly, the Court concludes that Plaintiff cannot demonstrate that he is likely to succeed on a Title II claim, if such a claim is cognizable in this context.

B.   <u>Irreparable Harm</u>

Absent a showing of likelihood of success on the merits, courts have declined to consider irreparable harm. <u>See</u> <u>e.g.</u>, <u>The Pitt News v. Fisher</u>, 215 F.3d 354, 366 (3d Cir. 2000); <u>Bowers v. National Collegiate Athletic Ass'n</u>, 974 F.Supp. 459, 467 n.3

---

[4] Although the Court has been unable to locate a case dealing with a university setting, the Court has found at least one case concluding that public schools are not places of public accommodation within the meaning of Title II because they are not open to the general public in the same way as other establishments covered by Title II. <u>See</u> <u>e.g.</u>, <u>Gilmore v. Amityville Union Free Sch. Dist.</u>, 305 F. Supp. 2d 271, 278-279 (E.D.N.Y. 2004); <u>Harless v. Darr</u>, 937 F. Supp. 1351, 1354 (S.D. Ind. 1996). Thus, it is not clear to the Court at this juncture that Title II is even applicable to Plaintiff's case.

14

(D.N.J. 1997). However, even if the Court considers the element of irreparable harm independently from Plaintiff's failure to establish a likelihood of success on the merits, the Court concludes that Plaintiff cannot demonstrate irreparable harm. Plaintiff alleges that his education is being delayed; however, the Court is not persuaded that any delay amounts to irreparable harm. The University has a policy of permitting Plaintiff to reapply to the school three years following an expulsion. Thus, Plaintiff has not demonstrated that he must be reinstated to the University at this time or he will be irreparably harmed.

Plaintiff also alleges that his NCAA scholarship is expiring; however, the Court has not received any evidence demonstrating that Plaintiff cannot pursue a scholarship or financial assistance at a later time. Accordingly, the Court is not persuaded that the potential expiration of Plaintiff's scholarship is sufficient to constitute irreparable harm.

Plaintiff also alleges that the University sent letters disclosing his judicial record to schools he applied to for admission; however, the evidence indicates that these letters were sent at Plaintiff's request or with Plaintiff's express permission. For example, Defendants have submitted at least one letter sent by Plaintiff to the Office of Judicial Affairs in which Plaintiff expressly requests the University to send copies of his judicial record to the Directors of Admission at another

15

university to which he had applied for admission.[5]  DX-2.  In these circumstances, the Court concludes that Plaintiff has failed to demonstrate that he will be irreparably harmed if the Court denies his request for injunctive relief.

    C.    Harm To Defendants And The Public Interest

As for the remaining factors, the Court concludes that the potential harm to the Defendants of granting injunctive relief neither weighs in favor of nor against injunctive relief, and the public interest is not served by granting an injunction where, as here, Plaintiff has not demonstrated the two requirements essential for injunctive relief, a likelihood of success on the merits and irreparable harm.  Accordingly, the Court concludes that the remaining factors do not weigh in favor of granting injunctive relief.

## CONCLUSION

In sum, the Court concludes that Plaintiff has not satisfied his burden of demonstrating the necessity of injunctive relief.  Plaintiff has not demonstrated a reasonable likelihood of success on the merits or that he will be irreparably harmed if an injunction is denied.  On balance, the Court concludes that the

---

[5] Another letter was sent by the University in response to an inquiry by State University of New York College at Cortland ("SUNY Cortland"); however, Plaintiff signed a release on the SUNY Cortland application authorizing the adjudicating authority, in this case the University, to provide verification or clarification to SUNY Cortland of information provided by Plaintiff regarding his disciplinary history.  DX-3.

remaining factors also do not support injunctive relief. Accordingly, the Court will deny Plaintiff's Motion For A Preliminary Injunction.

An appropriate Order will be entered.

17